# United States Court of Appeals for the Federal Circuit

2008-5004

KENNETH C. KEENER, WILLIAM P. SMITH,
and ANNE D. SMITH,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Thomas E. Redding, Redding & Associates, P.C., of Houston, Texas, argued for plaintiffs-appellants. With him on the brief were Teresa J. Womack and Sallie W. Gladney.

Deborah K. Snyder, Attorney, Commercial Litigation Branch, Tax Division, Appellate Section, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were Nathan J. Hochman, Assistant Attorney General, and Michael J. Haungs, Attorney.

Appealed from: United States Court of Federal Claims

Judge Francis M. Allegra

# United States Court of Appeals for the Federal Circuit

2008-5004

KENNETH C. KEENER, WILLIAM P. SMITH,
and ANNE D. SMITH,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 03-CV-2028 and 04-CV-907, Judge Francis M. Allegra.

_____

DECIDED:  January 8, 2009

_____

Before NEWMAN, PROST, and MOORE, <u>Circuit Judges</u>.

PROST, <u>Circuit Judge</u>.

Plaintiffs-Appellants Kenneth C. Keener, William P. Smith, and Anne D. Smith (collectively, "Taxpayers") brought suit against Defendant-Appellee the United States ("the Government") in the United States Court of Federal Claims seeking refunds of federal income taxes and interest paid in connection with their investments in various partnerships.  The Government filed a motion to dismiss for lack of jurisdiction, asserting that I.R.C. § 7422(h) foreclosed the court from exercising jurisdiction over Taxpayers' partnership-level challenges in this partner-level suit.  The Court of Federal Claims agreed and dismissed Taxpayers' claims for lack of jurisdiction.  <u>Keener v. United States</u>, 76 Fed. Cl. 455 (2007).  We affirm.

BACKGROUND

Taxpayers invested in partnerships that were part of a larger organization called AMCOR.[1]  During the early- to mid-1980s, "AMCOR was in the business of promoting tax shelter partnerships."  Crop Assocs.-1986 v. Comm'r of Internal Revenue, 80 T.C.M. (CCH) 56, 59 (2000).  In 1984 and 1985, the Taxpayers' partnerships reported ordinary loss deductions, which were apportioned among their partners.  As a result, on their income tax returns for 1984 and 1985, Keener and Smith reported their shares of the losses and used those losses to offset their taxable income.

After examining the returns of these partnerships, the Internal Revenue Service ("IRS") issued a Notice of Final Partnership Administrative Adjustment ("FPAA") to each partnership in 1991.  These FPAAs disallowed the ordinary loss deductions reported by each partnership in 1984 and 1985 and, as a result, reduced those deductions to zero.  The FPAAs each stated that the deductions were "not allowable for the following reasons," which included, "The partnership's activities constitute a series of sham transactions."

In response, certain partners filed petitions in the Tax Court for readjustment of partnership items pursuant to I.R.C. § 6226.  Among other challenges, these petitions claimed that the period for assessing tax attributable to the adjusted partnership items had expired prior to issuance of the FPAAs and that the IRS had erred in determining that the partnerships' activities constituted a series of sham transactions.  In order to

---

[1]  Specifically, Mr. Keener was a limited partner in Agri-Venture-II during the 1984 tax year and a limited partner in Agri-Venture Fund during the 1985 tax year.  Mr. Smith was a limited partner in Richgrove Grape Associates during the 1984 tax year and a limited partner in Desert Highlands Vineyards during the 1985 tax year.

end their involvement in these suits,[2] Taxpayers offered to settle with the IRS by executing Forms 870-P(AD) ("Settlement Agreements"), and the IRS accepted these settlements. In the Settlement Agreements, Taxpayers were permitted to report a fraction of the previously disallowed losses, and, in return, Taxpayers agreed that "no claim for refund or credit based on any change in the treatment of partnership items may be filed or prosecuted." The Settlement Agreements made no mention of the "sham transaction" determination in the FPAA, but did specify that the settlements "may result in an additional tax liability to [Taxpayers] plus interest as provided by law." Thereafter, the IRS assessed additional tax and interest, including penalty interest pursuant to § 6621(c), which Taxpayers paid in full.

Mr. Keener then filed administrative refund claims with the IRS in December 1999, and the Smiths filed administrative refund claims in March 2002. The IRS denied their claims, and Mr. Keener and the Smiths filed separate refund suits in the Court of Federal Claims, which were later consolidated. Keener, 76 Fed. Cl. at 457. After consolidation, the Government filed partial motions to dismiss, arguing that the Court of Federal Claims lacked jurisdiction under I.R.C. § 7422(h). Id. The court granted the Government's motion, id. at 470, and, after the parties stipulated to a dismissal of the remaining issues with prejudice, entered final judgment. Taxpayers appealed to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

---

[2] Ultimately, on July 19, 2001, the Tax Court issued stipulated decisions in the partnership-level proceedings. These decisions found that the adjustments to partnership income and expense were attributable to transactions "which lacked economic substance," as described in former I.R.C. § 6621(c)(3)(A)(v), "so as to result in a substantial distortion of [partnership income and/or expense]," as described in I.R.C. § 6621(c)(3)(A)(iv). The decisions also determined that the provisions of I.R.C. § 6229 did not bar the assessment of deficiencies in income tax attributable to the adjustments to partnership items.

**DISCUSSION**

"The Court of Federal Claims' decision to grant the Government's motion to dismiss for lack of jurisdiction is a matter of law, which this court reviews de novo." Mudge v. United States, 308 F.3d 1220, 1224 (Fed. Cir. 2002). As the party seeking the exercise of jurisdiction, Taxpayers have the burden of establishing that jurisdiction exists. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991).

At the Court of Federal Claims, Taxpayers argued that they were entitled to refunds on two separate grounds. First, Taxpayers claimed that they were due refunds of tax and interest on the theory that the IRS assessed the tax and interest after the statute of limitations in I.R.C. § 6229(a) expired. Second, and alternatively, Taxpayers claimed that they were due refunds of penalty interest—paid pursuant to I.R.C. § 6621(c)—because their underpayments of tax were not attributable to "tax motivated transactions." The Government filed a motion to dismiss, arguing that I.R.C. § 7422(h) deprives the Court of Federal Claims of jurisdiction over both of these claims, and the Court of Federal claims agreed, concluding that § 7422(h) precluded jurisdiction because the Taxpayers' claims for refunds are "attributable to partnership items." Keener, 76 Fed. Cl. at 460, 469-70. After providing a brief overview of the relevant law, we evaluate the dismissal of each of Taxpayers' claims in turn.

**A. Overview of TEFRA**

As partnerships are pass-through entities that do not themselves pay tax, all income, deductions, and credits are allocated to the individual partners. I.R.C. §§ 701-702; Conway v. United States, 326 F.3d 1268, 1271 (Fed. Cir. 2003). Partnerships are required to file annual information returns reporting the partners' distributive shares of

income, gain, deductions or credits, I.R.C. § 6031, and the individual partners then report their distributive shares on their federal income tax returns, I.R.C. §§ 701-704.

In 1982, Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, 96 Stat. 324. "TEFRA created a single unified procedure for determining the tax treatment of all partnership items at the partnership level, rather than separately at the partner level." In re Crowell, 305 F.3d 474, 478 (6th Cir. 2002); see AD Global Fund, LLC ex rel. North Hills Holding, Inc. v. United States, 481 F.3d 1351, 1355 (Fed. Cir. 2007) (TEFRA is "a statutory scheme that intends that adjustment to a partnership tax return be completed in one consistent proceeding before individual partners are assessed for partnership items."). Accordingly, whether a tax item is a "partnership item" governs how the TEFRA procedures apply. Significantly for this appeal, the code defines the terms "partnership item," "nonpartnership item," and "affected item" as follows:

> (3) Partnership item.--The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.
>
> (4) Nonpartnership item.--The term "nonpartnership item" means an item which is (or is treated as) not a partnership item.
>
> (5) Affected item.--The term "affected item" means any item to the extent such item is affected by a partnership item.

I.R.C. § 6231(a).

### B. Statute of Limitations Claim—I.R.C. § 6229(a)

Taxpayers first argue that the Court of Federal Claims had jurisdiction over their refund claims that allege that the IRS assessed tax and interest after the statute of

limitations in I.R.C. § 6229(a) had expired.  The Government argues that the Court of Federal Claims correctly determined that it lacked jurisdiction over Taxpayers' limitations claim because that claim is a challenge to a partnership item and TEFRA specifies that "[n]o action may be brought for a refund attributable to partnership items" (with exceptions not applicable here).  I.R.C. § 7422(h).  In response, Taxpayers assert that this jurisdictional bar does not apply to their limitations claim because it is not a "partnership item."

As this dispute turns on the meaning of the term "partnership item," we look first to its statutory definition:

> The term "partnership item" means, with respect to a partnership, <u>any item required to be taken into account for the partnership's taxable year under any provision of subtitle A</u> to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

<u>Id.</u> at § 6231(a)(3) (emphasis added).  The relevant Treasury regulation further defines a "partnership item" to include "the <u>legal and factual determinations</u> that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc."  Treas. Reg. § 301.6231(a)(3)-1(b) (emphasis added).

The Government argues that the limitations claim is a "partnership item" within the terms of the regulation because the statute of limitations "underlie[s] the determination of the amount, timing, and characterization of items of income, credit gain, loss, deduction, etc."  <u>See</u> <u>Weiner v. United States</u>, 389 F.3d 152, 157 (5th Cir. 2004) ("[T]he treasury regulations have implicitly included the statute of limitations determination within the definition of 'partnership item.'"); <u>Slovacek v. United States</u>, 36 Fed. Cl. 250, 255 (1996) (suggesting that the limitations claim "might be said to affect

the amount, timing, and characterization of income, etc., (partnership items) at the partnership level, if only in a thumbs-up or thumbs-down manner"). Taxpayers do not dispute that this regulation includes their limitations claim in its definition of "partnership item."

Rather, Taxpayers argue that the regulation should not be given deference because the regulation's inclusion of the limitations claim in its definition of "partnership item" contradicts the plain language of the statute. See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984) (stating that a regulation adopting a "permissible construction" of a statute is due deference "if the statute is silent or ambiguous with respect to the specific issue"). Taxpayers assert that the statute defines the term "partnership item" to include only (1) items found in subtitle A that (2) must be taken into account for the partnership's taxable year and (3) are designated as "more appropriately determined at the partnership level." While stipulating that their limitations claim satisfies the latter two requirements, Taxpayers argue that the claim cannot be a "partnership item" because it fails to satisfy the first requirement. In other words, Taxpayers contend that because the provisions relevant to this claim—namely, §§ 6229(a) and 6501—are found in subtitle F of the code, rather than subtitle A, the claim cannot be considered a partnership item by definition. Because the statute is allegedly clear in this regard, Taxpayers argue that the Treasury regulation is invalid to the extent it defines "partnership item" to include any item outside subtitle A.

The ambiguity in the statutory definition, however, is illustrated by Prati v. United States, 81 Fed. Cl. 422 (2008), where the court adopted a different understanding of the statute's definition of "partnership item." Under that court's reading, the statute's phrase

"under any provision of subtitle A" modifies not "any [partnership] item" (as Taxpayers argue), but what immediately precedes it (i.e., "the partnership's taxable year"). Id. at 430-31 (citing William Strunk Jr. & E.B. White, The Elements of Style 4-5, 59 (4th ed. 1999) (identifying rule of grammar that a restrictive clause limits or defines what immediately precedes it and is not set-off by a comma)). The court noted that this understanding "makes eminent sense because while subtitle A encompasses substantive rules for a partner's income tax, subtitle A's provisions make clear that this income is derived from the partnership during the partnership's taxable year, as defined by this subtitle." Id. at 431. Under this reading, a "partnership item" would be anything that affects—or, in other words, is "required to be taken into account for"—the partnership's taxable year. Id. (quoting I.R.C. § 6231(a)(3) (emphasis omitted)). That court's understanding "permits treating, as partnership items, any and all legal issues that influence the treatment of partnership items arising under subtitle A." Id. at 432. Also, under this reading a "partnership item" could include items outside subtitle A.

Because we are presented with these different interpretations, we hold that the statute does not unambiguously answer the question of whether a provision outside of subtitle A can be a "partnership item." See GHS Health Maint. Org., Inc. v. United States, 536 F.3d 1293, 1297 (Fed. Cir. 2008) ("Identifying 'the precise question at issue' is a necessary prerequisite to determining whether or not Congress has directly spoken on it."). In light of this ambiguity, we conclude that the Government's interpretation of the statute is, at a minimum, a reasonable one. Since the statute is ambiguous with respect to this issue, we give deference to the agency's interpretation of the statute. Chevron, 467 U.S. at 843. As noted above, Taxpayers do not dispute that the

regulation's definition of "partnership item" includes their limitations claim. Thus, the Court of Federal Claims correctly determined that it lacked jurisdiction over the limitations claim.[3]

We note, moreover, that the interpretation of the statutory language outlined in Prati is more reasonable and appropriate given the structure established by TEFRA. As noted above, TEFRA is "a statutory scheme that intends that adjustment to a partnership tax return be completed in one consistent proceeding before individual partners are assessed for partnership items." AD Global Fund, 481 F.3d at 1355. To remain consistent with this structure, the limitations claim raised by Taxpayers should not be litigated in a partner-level proceeding because it affects the partnership as a whole. Weiner, 389 F.3d at 156-57. Moreover, to allow a taxpayer to raise this argument in a partner-level proceeding "would undermine TEFRA's dual goals of centralizing the treatment of partnership items and ensuring the equal treatment of partners." Chimblo, 177 F.3d at 125.

In addition, Taxpayers' proffered interpretation of the statutory definition—which categorically excludes anything in subtitles B-J from the definition of "partnership item"—makes little sense given the framework established by TEFRA. Subtitle F of the Code, titled "Procedure and Administration," includes subchapter C, which is titled "Tax Treatment of _Partnership_ Items." (Emphasis added). This subchapter includes rules

---

[3]     With this result, we join a "legion" of other courts who, while adopting different rationales, have found that this limitations claim cannot be raised in a partner-level proceeding. Keener, 76 Fed. Cl. at 463 (citing Weiner, 389 F.3d at 156-57; Davenport Recycling Assocs. v. Comm'r of Internal Revenue, 220 F.3d 1255, 1260 (11th Cir. 2000); Williams v. United States, 165 F.3d 30 (6th Cir. 1998) (Table); Kaplan v. United States, 133 F.3d 469, 473 (7th Cir. 1998); Crowell v. Comm'r of Internal Revenue, 102 T.C. 683, 693 (1994)); see also Chimblo v. Comm'r of Internal Revenue, 177 F.3d 119, 125 (2d Cir. 1999).

relating to the treatment of partnership items (e.g., §§ 6221, 6229, and 6231), and, if we were to adopt Taxpayers' definition of "partnership item," these procedures for dealing with partnership items would not, themselves, be partnership items. The result would be that a partnership-level proceeding would not adjudicate these issues, instead leaving them to a plurality of potentially inconsistent partner-level proceedings. See I.R.C. § 6221 ("[T]he tax treatment of any partnership item shall be determined at the partnership level."). Like other courts,[4] we reject this impractical result. See River City Ranches # 1 Ltd. v. Comm'r of Internal Revenue, 401 F.3d 1136, 1144 (9th Cir. 2005) ("A partnership's tax items . . . are litigated in partnership proceedings—not in the individual partners' cases.").

## C. Penalty Interest Claim—I.R.C. § 6621(c)

Second, Taxpayers requested refunds of penalty interest paid pursuant to I.R.C. § 6621(c). Section 6621(c), which was in effect for the years at issue,[5] imposed an interest rate of 120% of the statutory rate on "any substantial underpayment attributable to tax motivated transactions." I.R.C. § 6621(c)(1).

> [T]he term "substantial underpayment attributable to tax motivated transactions" means any underpayment of taxes imposed by subtitle A . . .

---

[4] Indeed, as noted above, the Tax Court, when dealing with Taxpayers' partner-level suit, already addressed this limitations claim, albeit after these particular partners settled with the IRS. Agri-Cal Venture Assocs. v. Comm'r of Internal Revenue, 80 T.C.M. (CCH) 295 (2000).

[5] Former § 6621(c), originally codified I.R.C. § 6621(d), was added to the tax code in 1984 and applies to interest accruing after December 31, 1984. Tax Reform Act of 1984, Pub. L. No. 98-369, Div. A, § 144, 98 Stat. 494 (adding provision to tax code); Tax Reform Act of 1986, Pub. L. No. 99-514, § 1511(c)(1), 100 Stat. 2085 (amending and recodifying). Although this version of § 6621(c) was repealed in 1990, it remains applicable for the tax years at issue in this case. Omnibus Budget Reconciliation Act of 1990, Pub. L. No. 101-508, § 11341, 104 Stat. 1388 (specifying amendment and effective date).

which is attributable to 1 or more tax motivated transactions if the amount of the underpayment . . . exceeds $1,000.

Id. at § 6621(c)(2). The statute defines a "tax motivated transaction" to include "any sham or fraudulent transaction." Id. at § 6621(c)(3)(A)(v).

In this case, the FPAAs issued by the IRS disallowed the ordinary loss deductions reported by the partnerships and explained that these deductions were "not allowable" for several reasons, including a determination that "[t]he partnership's activities constitute[d] a series of sham transactions." After partner-level suits followed these FPAAs, Taxpayers chose to settle with the IRS. The Settlement Agreements made no mention of the "sham transaction" determinations in the FPAAs and stated that the settlements "may result in an additional tax liability to [Taxpayers] plus interest as provided by law." The IRS later assessed additional tax and interest, including penalty interest pursuant to § 6621(c), which Taxpayers paid.

Now arguing that they are entitled to a refund, Taxpayers assert that their underpayments of taxes were not attributable to "tax motivated transactions" and, thus, that the IRS improperly imposed penalty interest under this section. The Government responds that the Court of Federal Claims correctly concluded that it lacks jurisdiction over this claim for a refund because it is "attributable to partnership items." See I.R.C. § 7422(h). Noting that Taxpayers' arguments are focused on determining whether or not the partnerships' transactions were "tax motivated," the Government argues that— because the nature of the partnerships' transactions is a partnership item—Taxpayers' claims are based on the determination of a partnership item. Thus, the Government concludes, Taxpayers' claims are "quintessential claims for a refund 'attributable to partnership items'" and are barred by § 7422(h). We agree.

As noted above, § 7422(h) provides that "[n]o action may be brought for a refund <u>attributable to</u> partnership items . . . except as provided in section 6228(b) or section 6230(c)." I.R.C. § 7422(h) (emphasis added). "The phrase 'attributable to,' . . . is not defined anywhere in the Code and has no special technical meaning under the tax laws. Courts in various tax cases have construed the phrase according to its plain meaning, which is understood to be 'due to, caused by, or generated by.'" <u>Electrolux Holdings, Inc. v. United States</u>, 491 F.3d 1327, 1330-31 (Fed. Cir. 2007) (internal citations omitted) (addressing meaning of the phrase in § 6511(d)(2)(A)). Thus, the applicability of § 7422(h) turns on whether Taxpayers' refund claims are "due to, caused by, or generated by" a partnership item.

As the Government correctly notes, Taxpayers' refund claims are based on the assertion that the partnerships' transactions were not shams. This characterization of a partnership's transaction is a partnership item:[6] it bears directly on the validity of the deductions claimed by the partnership; it affects the tax treatment of other partnership item entries; and it can even dictate whether certain income tax concepts are applicable. <u>See</u> I.R.C. § 6221 ("[T]he tax treatment of any partnership item shall be determined at the partnership level."); Treas. Reg. § 301.6231(a)(3)-1(b) (defining "partnership item" to include "the legal and factual determinations that underlie the

---

[6]     The Government identifies numerous circuit courts in accord. <u>See, e.g.</u>, <u>Nault v. United States</u>, 517 F.3d 2, 8 (1st Cir. 2008) (noting that the court lacked jurisdiction "to determine whether the relevant transactions actually did have economic substance"); <u>RJT Invs. X v. Comm'r of Internal Revenue</u>, 491 F.3d 732, 736-38 (8th Cir. 2007) (status of partnership as a sham is a partnership item); <u>River City Ranches</u>, 401 F.3d at 1143-44; <u>Randell v. United States</u>, 64 F.3d 101, 107-08 (2d Cir. 1995) (court lacked jurisdiction to consider taxpayer's argument that partnership income was a sham). Moreover, Taxpayers do not dispute this characterization and even expressly concede that the nature of a partnership item is a partnership item.

determination of the amount, timing, and characterization of items of income, credit gain, loss, deduction, etc."); River City Ranches, 401 F.3d at 1143-44 ("The nature of the partnerships' transactions is . . . 'required to be taken into account . . . under . . . [the income tax provisions of] subtitle A.'" (alterations in original) (quoting I.R.C. § 6231(a)(3))).  Moreover, the nature of a partnership's transaction affects all partners and is not dependent on facts unique to a particular partner.  Cf. Prochorenko v. United States, 243 F.3d 1359, 1363 (Fed. Cir. 2001) (finding jurisdiction when issue was "entirely dependent on [the taxpayers'] own unique factual circumstances").  Thus, the nature of a partnership's transaction—and, specifically, whether a partnership transaction is a "sham"—is a partnership item.

Accordingly, because Taxpayers are requesting a refund based on the nature of the partnerships' transactions and because the nature of a partnership's transaction is a partnership item, Taxpayers' claims are "attributable to" partnership items.  Cf. id. (finding that refund was not "attributable to partnership items" where it was "based on" a nonpartnership item).  Accordingly, the Court of Federal Claims correctly determined that it lacks jurisdiction over Taxpayers' claim "for a refund attributable to partnership items."  I.R.C. § 7422(h).

In an attempt to avoid this result, Taxpayers recharacterize their claims as general claims for a refund of § 6621(c) penalty interest—which, they assert, is an affected item and not a partnership item—and argue that § 7422(h) does not bar refund claims for affected items.  Taxpayers explain that an affected item—defined by statute as "any item to the extent such item is affected by a partnership item," I.R.C. § 6231(a)(5)—includes both a partnership-level component (requiring partnership-level

2008-5004                                    13

determinations) and a partner-level component (requiring partner-level determinations). Thus, by challenging the penalty interest "as a whole," Taxpayers contend that they can avoid the statute's jurisdictional bar. We are not persuaded.

First, even assuming that penalty interest under § 6221(c) is an affected item, Taxpayers only challenge a partnership-level component of this affected item (namely, the nature of the partnerships' transactions), without advancing any argument regarding partner-level components (e.g., a partner's underpayment must exceed $1,000 in order to be "substantial").[7] Second, Taxpayers' argument relies on the mistaken premise that § 7422(h) only bars claims for a refund of partnership items. The statute, however, bars refund claims attributable to partnership items. Because the two terms are not coextensive, our inquiry must focus on the language in the statute. See Prochorenko, 243 F.3d at 1363 ("While it is true that the Prochorenkos were seeking a refund of partnership taxes, their refund was not 'attributable to partnership items.'").

Taxpayers also obliquely suggest that this case is tantamount to the potential situation where the IRS imposes penalty interest when no partnership-level determination has been made that the transactions were tax motivated. Quite simply, this is not that case. Each relevant FPAA disallowed the partnership's deductions because "[t]he partnership's activities constitute[d] a series of sham transactions." Taxpayers concede that the FPAAs are conclusive, as this finding was not altered by the Settlement Agreements. And the statute is clear that a "sham or fraudulent transaction" is a "tax motivated transaction." I.R.C. § 6621(c)(3)(A)(v).

---

[7] We, therefore, do not decide whether § 7422(h) precludes jurisdiction over every claim for a refund of penalty interest imposed pursuant to § 6621(c).

More specifically, Taxpayers' argument appears to be that the relevant FPAAs fail to establish that Taxpayers' underpayments were attributable to "tax motivated transactions" because the FPAAs list multiple, independent grounds for the disallowance—some of which qualify as "tax motivated transactions" and others which do not—making it impossible to determine whether Taxpayers' underpayments were "attributable to" the tax motivated grounds. Even assuming that the Court of Federal Claims had jurisdiction over this argument, we would not be persuaded. See Irom v. Comm'r of Internal Revenue, 866 F.2d 545, 547-48 (2d Cir. 1989) (finding that taxpayer should pay penalty interest for portion of deficiency attributable to a tax motivated transaction even though that deficiency may also be attributable to other factors). The inequitable result of Taxpayers' contention would be to impose penalty interest when a deduction is disallowed because the partnerships' transactions were tax motivated, but not to impose penalty interest when that deduction is also disallowable on other inseparable grounds.

In sum, we conclude that Taxpayers' claims for a refund are barred by I.R.C. § 7422(h) because they are based on the nature of the partnerships' transactions.

**CONCLUSION**

The Court of Federal Claims correctly determined that, under I.R.C. § 7422(h), it lacked jurisdiction over: (1) Taxpayers' claims for refunds of tax and interest on the theory that the IRS assessed tax and interest after the statute of limitations in I.R.C. § 6229(a) expired; and (2) Taxpayers' claims for refunds of penalty interest, I.R.C. § 6621(c), on the grounds that their underpayments of tax were not attributable to "tax motivated transactions."

<u>AFFIRMED</u>

2008-5004                                          16